UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

IN RE:                                                          **Case No.: 12-12467 (SMB)**

Indhira G. Ramirez,                                              CHAPTER 7

                                                Debtor.

------------------------------------------------------------------------X
The Kurland Group; Gregory Messer,                              **Adv. Proc.:11-09058 (SMB)**
in his capacity as Trustee,

                                                Plaintiff,

                          -against-

FNBN I, LLC,

                                                Defendant.
------------------------------------------------------------------------X

## FNBN I, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN REPLY ON FNBN I, LLC'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND AFFIDAVIT

Frenkel Lambert Weiss Weisman & Gordon, LLP
53 Gibson Street
Bay Shore NY 11706
(212) 344-3100
*Attorneys for Defendant*
*FNBN I, LLC*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT............................................................................................................................3

FNBN I has the right to enforce the note and mortgage ..............................................................3

    A.    FNBN I has the right to enforce the note and mortgage as the holder in possession of the duly endorsed note...........................................................3

    B.    Kurland does not refute that FNBN I has the right to enforce the note and mortgage...........................................................................................4

    C.    The Baisley Decision has no bearing on FNBN I's right to enforce the note and mortgage..........................................................................5

    D.    The cases cited by Kurland do not support Kurland's position that FNBN I cannot enforce the note and mortgage, but to the contrary support FNBN I's right to enforce the note and mortgage............................................................................................6

  I.    Kurland has not demonstrated conduct warranting equitable subordination..........8

    A.    The facts do not demonstrate fraud.............................................8

    B.    There was no fraud by the lender as a matter of law.........................10

    C.    Kurland does not demonstrate other inequities...............................11

  II.    The circumstances of this case fall far short of satisfying the elements required for equitable subordination.....................................................................12

  III.    The D'Oench Duhme Doctrine applies to successors to the FDIC..................14

  IV.    Kurland fails to state a claim for a charging lien......................................16

CONCLUSION..................................................................................................16

# TABLE OF AUTHORITIES

## Cases

In Re 80 Nassau Associates
     169 B.R. 832 (Bankr. S.D.N.Y. 1994)......................................................13, 14

Aurora Loan Services, LLC v. Taylor
     114 A.D.3d 627 (2nd Dept. 2014)........................................................7, 8

Bank of New York v. Silverberg
     86 A.D.3d 274 (2nd Dept.)........................................................................6

Beckford v. EmpireMut. Ins. Group
     135 A.D.2d 228, 233 (2nd Dept. 1988)........................................................11

Benjamin v. Diamond (In Re Mobile Steel Corp.)
     563 F.2d 692 (5th Cir. 1977)....................................................................14

Campbell Leasing, Inc. v. Federal Deposit Ins. Corporation
     901 F.2d 1244 (5th Cir. 1990)...........................................................:14, 15

Deutsche Bank National Trust Company v. Pietranico
     928 N.Y.S.2d 818, 2011 N.Y. Slip Op. 21261 (Suff. Cty. 2011).............................4

FDIC v. Newhart
     713 F.Supp. 320, at 324 (W.D. Missouri 1989), aff'd, 892 F.2d 47 (8th Cir. 1989).......15

FDIC v. Wrapwell Corp.
     922 F. Supp. 913 (S.D.N.Y. 1996)...............................................................15

Federal Savings and Loan Insurance Company v. Murray
     853 F.2d 1251 (5th Cir. 1988)...........................................................14, 15

Goldstein, Goldman, Kessler & Underberg v. 4000 East River Associates
     64 A.D.2d 484 (4th Dept. 1978)..................................................................16

Gorham-Dimaggio v. Countrywide Home Loans, Inc.
     592 F. Supp.2d 283 (N.D.N.Y. 2008).............................................................11

Kondaur Capital Corp. v. McCary
     115 A.D3d 649 (2nd Dept. 2014)..................................................................7

Laskin v. Bank of America, N.A.
     2009 Misc. LEXIS 2574 (Nass Cty. 2009).......................................................10

Lightsquared LP v. SP Special Opportunities LLC (Un Re Lightsquared Inc.)
    511 B.R. 253 (Bankr. S.D.N.Y. 2014)……………………………………………...14

Maurillo v. Park Slope U-Haul
    194 A.D.2d 142 (2nd Dept. 1993)……………………………………………...10

Mauro v. Countrywide, Inc.
    116 A.D.2d 930 (2nd Dept. 2014)……………………………………………...10

Mortgage Electronics Registration Systems, Inc. v. Coakley
    41 A.D.3d 674 (2nd Dept. 2007)……………………………………………...3

Standard Federal Bank v. Healy
    7 A.D.3d 610 (2nd Dept. 2004)……………………………………………...11

Sutherland v. Remax 2000
    20 Misc. 3d 1131[A], 2008 N.Y. Slip Op 51701[U] (Nass. Cty. 2008)……………….10

U.S. Bank v. Collymore
    68 A.D.3d 752 (2nd Dept. 2009)……………………………………………...6

Walts v First Union Mtge. Corp.
    259 A.D.2d 322 (1st Dept. 1999)……………………………………………...11

Weaver Hardware Company v. Solomovitz
    235 N.Y. 321 (1923)……………………………………………………3, 4

## Statutes and Regulations

Uniform Commercial Code (UCC) § 1-201 (20)…………………………………....3, 7

Uniform Commercial Code (UCC) § 3-301……....………………………….........3, 7

Uniform Commercial Code (UCC) § 3-305……....………………………….............7

Uniform Commercial Code (UCC) § 3-114 (1)……………………………………….3

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the defendant FNBN I LLC (hereinafter also referred to as "FNBN I") in opposition to the plaintiff The Kurland Group's (hereinafter also referred to as "Kurland") motion for summary judgment, and in reply to Kurland's opposition to FNBN I's motion to dismiss and for summary judgment.

This Adversary Proceeding is an attempt by an attorney - who no longer represents the Debtor or her estate, only herself and her new law firm as an unsecured creditor - to have her attorney's fees paid ahead of all other creditors. In attempting to do so, Kurland puts forward nothing more than speculative and misplaced theories and arguments unsupported by law or fact that are devoid of merit.

The debtor Indhira Ramirez (hereinafter also referred to as "the Debtor" or "Ramirez") has abandoned the subject real property, and has made no payments on the mortgage loan in over 9 years. Debtor herself has suffered no damage and has walked away from this entire transaction. Only her former attorney Kurland, the plaintiff in this Adversary Proceeding, is proceeding by objecting to FNBN I's claim by invoking theories that have no basis in law or fact in order to attempt to obtain her attorney's fees.

The subject mortgage loan - as is common in the mortgage industry- was transferred to various entities and serviced by different loan servicers. Ultimately, FNBN I acquired the loan from the Federal Deposit Insurance Corporation (the "FDIC") when the FDIC took over First National Bank of Nevada, which had just merged with First National Bank of Arizona.

FNBN I had possession of the original note with the endorsed allonges since December 29, 2008 when it purchased the loan, along with other loans, from the FDIC. When FNBN I's prior counsel, who had been representing First National Bank of Nevada in the Chase

1

Foreclosure Action, moved to substitute FNBN I in the Chase Foreclosure Action, prior counsel

never requested the original note with the endorsed allonges or a copy of it from FNBN I.

Thereafter, FNBN I, through its loan servicer, retained Frenkel, Lambert, Weiss,

Weisman & Gordon, LLP to represent it including for a discontinuance of the Chase Foreclosure

Action, and to commence a foreclosure action in FNBN I's name.

FNBN I had possession of the original note with endorsed allonges since December 29,

2008, prior to the commencement of FNBN I's foreclosure action, and is thus the holder of the

note with the right to enforce the note pursuant to § 3-301, and the mortgage which passes as

incident to the note.  FNBN I is prepared to bring the original note with allonges to any hearing

on this motion for inspection by both the plaintiffs and the Court.

Kurland is not entitled to have FNBN I's secured lien equitably subrogated.  Its theory of

equitable subrogation is completely misplaced because, among other things, it cannot be deemed

to have been effected by the closing of this mortgage loan as Kurland's representation of

Ramirez commenced well after that time and it was aware of the secured lien on the subject

property at that time.

In sum, this Adversary Proceeding is a desperate attempt by Kurland to obtain her

attorney's fees, in a matter that not even the Debtor any longer has an interest, by invoking

theories that are completely unsupported in law or fact.

## ARGUMENT

**I.     FNBN I HAS THE RIGHT TO ENFORCE THE NOTE AND MORTGAGE**

**A.     FNBN I HAS THE RIGHT TO ENFORCE THE NOTE AND MORTGAGE AS
THE HOLDER IN POSSESSION OF THE DULY ENDORSED NOTE**

The affidavit by Chris White of PennyMac Loan Services, LLC and the exhibits thereto,

the affidavit by Robert Schoppe of the FDIC and the exhibits thereto, and the affidavit by

Mallory Garner of PennyMac Loan Services, LLC submitted herewith establish that FNBN I is

in possession of the duly endorsed note with allonges, and was in possession of the duly

endorsed note with allonges since December 29, 2008.

FNBN I is a secured creditor with the right to enforce the note and mortgage, as the

holder of the note and mortgage.  Uniform Commercial Code (UCC) § 1-201(20) defines holder

as "a person who is in possession of a document of title or an instrument or an investment

certificated security drawn, issued or indorsed to him or to his order or to bearer or in blank."

UCC § 3-301, provides that "the holder of an instrument whether or not he is the owner may

transfer or negotiate it and, except as otherwise provided in Section 3-603 on payment or

satisfaction, discharge it or enforce payment in his own name."

There is no requirement of any kind than an endorsement of an instrument be dated.

Moreover, whether or not an endorsement is dated has no bearing on whether it was properly

endorsed.  UCC § 3-114(1) provides that "the negotiability of an instrument is not affected by

the fact that it is undated, antedated or postdated."

As a matter of law, the possession of the Note is accompanied by the interest in the

Mortgage as incident to the note.  See, e.g., Mortgage Electronics Registration Systems, Inc. v.

Coakley, 41 A.D.3d 674 (2nd Dept. 2007); Weaver Hardware Company v. Solomovitz, 235 N.Y.

3

321 (1923); Deutsche Bank National Trust Company v. Pietranico, 928 N.Y.S.2d 818, 2011 N.Y.

Slip Op. 21261 (Suff. Cty. 2011). In other words, the mortgage lien travels with the note as

incident thereto. Thus, it is unequivocal that FNBN I is the holder of the note with the right to

enforce both the note and the mortgage.

## B.   KURLAND DOES NOT REFUTE THAT FNBN I HAS THE RIGHT TO ENFORCE THE NOTE AND MORTGAGE

The documents submitted by Kurland provide no factual or legal basis to support its

assertion that FNBN I does not possess the duly endorsed note with allonges. The affidavit by

Lisa Magnuson attached to the Declaration of Yetta G. Kurland as Exhibit 1 is consistent with

the chain of transfers demonstrated in the first allonge to the note. Ms. Magnuson stated in her

affidavit that Residential Funding Corporation ("RFC") purchased the loan shortly after it was

originated. The attested transfers to First National Bank of Nevada and thereafter to RFC are

consistent with the endorsements contained in the first allonge.

Kurland also points to Schedule C of the unverified Complaint filed by the attorneys for

Chase in the action entitled J.P. Morgan Chase Bank, N.A. v. Indhira Ramirez, Supreme Court

Suffolk County, Index No. 1777/2006 (hereinafter referred to as "the Chase Foreclosure Action")

that set forth that the plaintiff could not locate the promissory note. However, the fact that the

Chase attorneys had set forth in a schedule that the note could not be located at that time has no

bearing on FNBN I's claim. For one thing, that Complaint was not verified by Chase.

Moreover, whether or not the promissory note could be located in 2006 is ultimately irrelevant in

light of the fact that the original note with allonges is currently in the possession of FNBN I

through the actual physical possession of the original note with allonges by its loan servicer

Penny Mac Loan Services on its behalf.

4

Kurland's also argues that because the evidence presented by the prior counsel for FNBN I in the Chase Foreclosure Action did not demonstrate all the endorsements to the note, FNBN I cannot now present the note with all the endorsements in this proceeding. However, the Porzio Bromberg firm, as set forth in the accompanying affidavit by Mallory Garner, did not have a copy of the original note with all of the allonges that was in the possession of FNBN I. Furthermore, the point that Porzio Bromberg was arguing in the papers submitted in support of the motion to substitute in FNBN I as the plaintiff was not Chase's standing, but rather that Chase was no longer the owner of the mortgage loan and that FNBN I purchased the mortgage loan from the FDIC.

In addition, as set forth in the affidavit of Mallory Garner submitted herewith, the servicer for First National Bank of Nevada initially hired the Porzio Bromberg firm. After the loan was subsequently transferred to the FDIC and then to FNBN I, PennyMac became the loan servicer. At that time, FNBN I, through its loan servicer PennyMac, had possession of the original "wet ink" note with the original allonges. Significantly, Porzio Bromberg never requested a copy of the original note with the original allonges from PennyMac.

There is simply no basis in law or fact why FNBN I should be precluded from enforcing the note with allonges and the mortgage that are in its possession.

## C.   THE BAISLEY DECISION HAS NO BEARING ON FNBN I'S RIGHT TO ENFORCE THE NOTE AND MORTGAGE

Because the original note then in the possession of FNBN I was not before Justice Baisley in the Chase Foreclosure Action further highlights why collateral estoppel does not apply with respect to the decision issued by Justice Baisley in the Chase Foreclosure Action ("the Baisley Decision"). A copy of the note with all of the duly endorsed allonges was not before

Justice Baisley. Justice Baisley's comments on whether the first allonge demonstrated that

Chase was the holder of the Note were made with respect to the copy of the first allonge as it

appeared before and without the specific endorsements to RFC, and then to JP Morgan Chase.

Significantly, the issue argued by FNBN I's attorneys in support of its motion to

substitute FNBN I as the plaintiff in the Chase Foreclosure Action was not Chase's standing to

commence the Chase Foreclosure Action, but rather that Chase was no longer the owner of the

mortgage loan as a result of the subsequent purchase of the mortgage loan by FNBN I from the

FDIC. As set forth in the defendant's Memorandum of Law in Support of the defendant's

motion for summary judgment, in order for the doctrine of collateral estoppel to apply, the issues

must be identical, and the litigant must have had a full and fair opportunity to litigate the issues.

For the same reason, the Rooker-Feldman doctrine is inapplicable to this case.

**D.     THE CASES CITED BY KURLAND DO NOT SUPPORT KURLAND'S
        POSITION THAT FNBN I CANNOT ENFORCE THE NOTE AND MORTGAGE,
        BUT TO THE CONTRARY SUPPORT FNBN I'S RIGHT TO ENFORCE THE
        NOTE AND MORTGAGE**

Bank of New York v. Silverberg, 86 A.D.3d 274 (2nd Dept.), a case cited by Kurland, has

no relevance to this case. In Silverberg, the issue was whether a written assignment from MERS

could effectively transfer a Note absent MERS' possession of the Note, and the court held that

while MERS could assign the mortgage as the nominee of the lender, it could not assign the note

unless it was the holder of the note. In U.S. Bank v. Collymore, 68 A.D.3d 752 (2nd Dept. 2009),

another case cited by Kurland, the court held that "either a written assignment of the underlying

note or the physical delivery of the note prior to the commencement of the foreclosure action is

sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable

incident." Therefore, Collymore supports FNBN I's right to enforce the Note, and the underlying

6

mortgage that passes with the note as an inseparable incident thereto.  The affidavit by Chris

White of PennyMac Loan Services, LLC, together with the exhibits attached thereto, and the

affidavit by Robert Schoppe of the FDIC, together with the exhibits attached thereto, establish

that the note was delivered to FNBN I on December 29, 2008.

Moreover, in <u>Kondaur Capital Corp. v. McCary</u>, 115 A.D3d 649 (2nd Dept. 2014), also

cited by Kurland, the appellate court correctly clarified that the essential fact necessary to prove

standing is not details of the act of the note being physically delivered but that where the plaintiff

"established that it had physical possession of the note prior to commencement of this action" the

plaintiff established that it had standing to enforce the note.  <u>See also, Aurora Loan Services,</u>

<u>LLC v. Taylor,</u> 114 A.D.3d 627 (2nd Dept. 2014).

This is of course consistent with UCC § 1-201(20) which defines holder as a person who

is in possession of an instrument indorsed to him or to his order or to bearer or in blank, and also

with  UCC § 3-301 which provides that the holder of an instrument, whether or not he is the

owner, may transfer or negotiate it and enforce payment in his own name.

Consistent with the public policy behind the Uniform Commercial Code  - to promote the

negotiability of instruments - once the proponent establishes that it is in possession of the

endorsed Note, the burden shifts to the other party to prove that the proponent does not have the

right to enforce the Note.  For example, Official Comment 3 to UCC 3-305 states with respect to

"all defenses includes nondelivery, conditional delivery or delivery for a special purpose" that

"under this Article such nondelivery or qualified delivery is a defense (Sections 3-306 and 3-

307) and the defendant has the full burden of establishing it."

Clearly, FNBN I is not required to prove the physical delivery of the Note with respect to

each instance that the Note was transferred.  Kurland has not cited one case that stands for a such

a principle that provides that a holder of an instrument is required to prove the circumstances in which an instrument was physically delivered to each previous holder of the instrument (even with respect to those previous transactions to which the current holder was not a party). This would, of course, be an unreasonable and impossible burden. As set forth above, in accordance with the policy behind the Uniform Commercial Code to promote the negotiability of instruments, the burden to prove nondelivery is on the party opposing the proponent's status as a holder of the instrument. Moreover, as the appellate division held in Aurora Loan Services, LLC v. Taylor, 114 A.D.3d 627 (2nd Dept. 2014), where a plaintiff in a foreclosure action establishes that it obtained possession of the original note at a specific time, it establishes its standing as the holder of the note.

## II.   KURLAND HAS NOT DEMONSTRATED CONDUCT WARRANTING EQUITABLE SUBORDINATION

### A.   THE FACTS DO NOT DEMONSTRATE FRAUD

Kurland's has not established that misrepresentations were made by the lender, and its argument to invoke the doctrine of equitable subordination is simply an unsupported legal theory replete with speculation without basis in law or fact. As such, it should be rejected by this Court.

The settlement agent at the closing of this loan, Matthew Blank (hereinafter referred to as "Blank") did not misrepresent who owned the property at the time that Ramirez signed the note and mortgage. As more fully set forth in the FNBN I's Memorandum of Law in Support of its Motion for Summary Judgment, the Jameses were the owners of the property at the time that it was deeded to Ramirez. Moreover, Blank understood that McCloud was not the owner of the property at the time that the property was deeded to Ramirez, and that the Jameses were the owners of the property at that time. For example, Blank testified at his deposition in the Chase

Foreclosure Action as follows:

Q: And my question, sir, is in connection with this transaction from the Jameses to Keisha McCloud on December 13th, 2002, did Keisha McCloud give any consideration for the purchase of the property?
A: At the time, I believe[d] she did. I believe I have subsequently come to learn that she did not.

*See, Exhibit 13 to Kurland Affirmation, Blank deposition, p. 22, l. 11 – p. 23, l. 8.*

Q: So, to the best of your knowledge, this 75,000, was any consideration to have been given between - - from Ms. McCloud to the Jameses was, in fact, never tendered or given?
A: That is correct, to the best of my knowledge.

*See, Exhibit 13 to Kurland Affirmation, Blank deposition, p. 24, ll. 12 – 17.*

Q: So the transaction in 2002 between the Jameses and McCloud was a nullity, and did you learn in July of 2003 whether or not the deed in December of 2002 had been recorded?
A: I learned through the title company on the McCloud to Ramirez transaction that there was no - -
Q: Wait a second. Stop. You don't mean McCloud to Ramirez transaction?
A: I'm sorry. James to Ramirez. That there was no record of the James to McCloud transaction appearing in any chain of title, therefore, it was not recorded.

*See, Exhibit 13 to Kurland Affirmation, Blank deposition, p. 40, ll. 10 – 22.*

Thus, Blank sets forth that he understood that the purported transaction between the Jameses and McCloud in December of 2012 was never consummated. He also understood that the closing between the Jameses and McCloud needed to be redone and, as of March of 2003, was in the process of being rescheduled. He testified that "at that time, too, there was a closing scheduled again on this property, James to McCloud, a new closing back in March that was supposed to take care of all this. They were redoing the documents, redoing the loan. That loan never came through . . ." *See, Exhibit 13 to Kurland Affirmation, Blank deposition, p. 28, l. 23 – p. 29, l. 3.*

Furthermore, as demonstrated and discussed in FNBN I's Memorandum of Law in Support of its Motion for Summary Judgment, McCloud herself never believed that the property had been transferred to her.

9

**B.    THERE WAS NO FRAUD BY THE LENDER AS A MATTER OF LAW**

In addition, as a matter of law, the lender itself had no duty to Ramirez over and above
the contractual duty between the lender as mortgagee and Ramirez as mortgagor.

As the court held in Sutherland v. Remax 2000, 20 Misc. 3d 1131[A], 2008 N.Y. Slip Op
51701[U] (Nass. Cty. 2008), in order to establish an agency relationship "it must be established
that the entity consented to a fiduciary relationship resulting from another's consent to allow the
entity to act on the other's behalf and subject to the other's control. The agent is an entity who
acts for or in the place of the principal by authority from the principal." The court in Sutherland
further held that "Sutherland's allegation that Wells Fargo is liable under an agency theory is
conclusory and not supported by any further allegations beyond seeking to establish a course of
dealings between Wells Fargo, ASK and Remax.  A course of dealings is insufficient to
demonstrate that Wells Fargo controlled either Remax or ASK as a principal . . . Thus, a claim
for fraud against Wells Fargo must stand on its own."  See also, Laskin v. Bank of America,
N.A., 2009 Misc. LEXIS 2574 (Nass Cty. 2009); Maurillo v. Park Slope U-Haul, 194 A.D.2d
142 (2nd Dept. 1993)("Agency is a legal relationship between a principal and an agent. It is a
fiduciary relationship which results from the manifestation of consent of one person to allow
another to act on his or her behalf and subject to his or her control, and consent by the other so to
act.", at 146.)  Thus, neither Blank nor the mortgage broker were agents for the lender such that
any representations they made were attributable to the lender.

Furthermore, neither Blank nor the mortgage broker, neither of whom were in a fiduciary
relationship to Ramirez, owed a duty to Ramirez (and certainly owed no duty to Kurland). See,
e.g., Mauro v. Countrywide, Inc., 116 A.D.2d 930 (2nd Dept. 2014) ("While Kaplan, in her
capacity as the settlement agent, had a fiduciary duty to the plaintiff to disburse the escrowed

10

funds in accordance with the plaintiff's instruction, Kaplan, as the attorney for the lender, had no further duty to the plaintiff at the closing.")

Moreover, the legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower. See, e.g., Gorham-Dimaggio v. Countrywide Home Loans, Inc., 592 F. Supp.2d 283 (N.D.N.Y. 2008); Standard Federal Bank v. Healy, 7 A.D.3d 610 (2nd Dept. 2004); Walts v First Union Mtge. Corp., 259 A.D.2d 322 (1st Dept. 1999). Thus, any potential breach of duty must arise out of a positive duty because of the existence of the contractual relationship as mortgagor and mortgagee, or because of the negligent manner in which some act which the contract provides for is done. See, e.g., Beckford v. EmpireMut. Ins. Group, 135 A.D.2d 228, 233 (2nd Dept. 1988). Thus, because the lender did not have a fiduciary relationship with or fiduciary obligation to the borrower Ramirez, the lender had no legal duty to the borrower other than to comply with the contractual obligations set forth in the note and mortgage.

Relatedly, because there was no fiduciary relationship, as a matter of law, Ramirez could not be deemed to have justifiably relied upon any representations made by Blank in any event.

## C.   KURLAND DOES NOT DEMONSTRATE OTHER INEQUITIES

Kurland offers no support whatsoever for its assertion that "beyond the existence of fraud and constructive fraud" the mortgage is "rife with inequities." Kurland does not even identify which "mortgage documents" are "missing" let alone submit proof that any documents are missing. As was pointed out in FNBN I's Memorandum of Law in Support of its motion for summary judgment, there was no allegation in the Adversary Complaint that Ramirez did not sign either the Note or Mortgage. To the contrary, Ramirez testified at her deposition in the

Chase Foreclosure Action that she signed the mortgage. *Exhibit A, Ramirez Deposition p. 123, l. 21 to p. 124, l. 6. and p. 127, ll. 5-15.* The Adversary Complaint only alleges that there are numerous required mortgage documents which are missing and/or "potentially forged." The only specific allegation is that "Debtor's name is misspelled on the last page of the Contract of Sale in what is alleged to be her signature." Kurland does not allege that the Mortgage or Note or even the Deed are forged.

Given the opportunity to support these vague allegations with supporting evidence in its papers in opposition to FNBN I's motion for summary judgment, Kurland utterly fails to do so, but merely repeats these allegations. The only documents from the closing of the mortgage loan that Kurland submits other than the note and mortgage is the HUD-1 Settlement Statement and a document showing a payment to Washington Mutual Bank out of the proceeds of the subject mortgage (Exhibit 14 to the Kurland Declaration), neither of which demonstrate that the subject mortgage loan is anything other than a valid and enforceable mortgage loan.

For all of these reasons alone, any request by Kurland for equitable subordination must be denied.

## III.    THE CIRCUMSTANCES OF THIS CASE FALL FAR SHORT OF SATIFYING THE ELEMENTS REQUIRED FOR EQUITABLE SUBORDINATION

While equitable subordination is not necessarily dependent upon establishing a cause of action for fraud, if a cause of action for fraud or other legally recognized cause of action is not established, equitable subordination is dependent upon a showing that the superior secured creditor exercised dominion and control over the debtor as a fiduciary or an insider to its unfair advantage over other creditors. As set forth in FNBN I's Memorandum of Law in Support of its

Motion for Summary Judgment, neither FNBN I nor the original lender could be deemed to have

acted to the unfair advantage of Kurland because Kurland's involvement as Ramirez's attorney

did not occur until well after the actions taken by the lender at the closing of the loan. At the

time that she was retained by Ramirez, Kurland was aware of the secured lien of record already

on the property, and the allegations of what occurred at the closing of the subject loan was the

very basis of Kurland's representation of Ramirez. Therefore, Kurland could not rationally be

deemed to have been injured by events that took place in connection with the making of the

mortgage loan or by actions that allegedly were taken in connection with the making of the

subject mortgage loan.

        In Re 80 Nassau Associates, 169 B.R. 832 (Bankr. S.D.N.Y. 1994) is instructive. In 80

Nassau Associates, the court held that "unless the creditor has dominated or controlled the debtor

to gain an unfair advantage, his claim will be subordinated, based upon inequitable conduct, only

if the claimant has committed some breach of an existing, legally recognized duty arising under

contract, tort or other area of law." In Re 80 Nassau Associates, 169 B.R. 832, at 840. The court

then pointed out that the secured creditor mortgagee Crossland Savings Bank was "not an

insider, no fiduciary duty existed between the parties, and the Complaint neither states nor

implies that Crossland exercised dominion and control over the Debtors' affairs." In Re 80

Nassau Associates, 169 B.R. 832, at 841. Therefore, in order to equitably subordinate

Crossland's claim, more than "inequitable conduct" must be demonstrated – a breach of a

specific legal duty in tort or contract had to be demonstrated. Because there was no valid legal

claim against Crossland for fraud or promissory estoppel, Crossland was not subject to being

equitably subordinated to the other creditors – except possibly for one creditor who arguably

could be deemed to have justifiably relied upon and therefore have been induced by certain of

Crossland's representations.

In this case, it is patent that neither FNBN I nor the original lender are insiders or control the debtor Ramirez as her fiduciary or otherwise. Therefore, in order to satisfy the "conduct" element necessary for equitable subordination, Kurland would need to establish the elements for a known existing legal cause of action, and not merely inequitable conduct that falls short of a breach of a recognized existing legal duty.

Another element that is necessary in order to establish a case for equitable subordination is that the complaining creditor must have been harmed as a result of the acts of the superior secured creditor. See, e.g. Benjamin v. Diamond (In Re Mobile Steel Corp.), 563 F.2d 692 (5th Cir. 1977); Lightsquared LP v. SP Special Opportunities LLC (Un Re Lightsquared Inc.), 511 B.R. 253 (Bankr. S.D.N.Y. 2014); In Re 80 Nassau Associates, 169 B.R. 832 (Bankr. S.D.N.Y. 1994). In this case, even assuming arguendo that the first element is satisfied – and it is not as set forth above - Kurland can not be deemed to have been harmed by any of the alleged acts by FNBN I or the lender complained of. Kurland was aware of the secured lien on the subject property when it first came into the picture, and, moreover, the allegations of what occurred at the closing of the subject loan was the very basis of Kurland's representation of Ramirez for which Kurland is now claiming a status as a creditor.

## IV.  THE D'OENCH DUHME DOCTRINE APPLIES TO SUCCESSORS TO THE FDIC

Contrary to Kurland's contention, the cases of Federal Savings and Loan Insurance Company v. Murray, 853 F.2d 1251 (5th Cir. 1988) and Campbell Leasing, Inc. v. Federal Deposit Ins. Corporation, 901 F.2d 1244 (5th Cir. 1990) do not stand for the proposition that the D'Oench Duhme doctrine does not protect a successor in interest to the FDIC from asserted

14

claims or defenses. In each of those cases, the court was making a determination as to whether claims or defenses could be asserted against the FDIC, or in the case of Murray, the Federal Savings and Loan Insurance Company, and in both cases the court held that they could not because D'Oench Duhme gives both the FDIC and its successors holder in due course status.

Moreover, the court held in Campbell Leasing that the successor and purchaser of the loan from the FDIC, NCNB Texas National Bank, *was* also protected from the assertion of claims or defenses as the successor to the FDIC. The court held in Campbell Leasing that "the FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law." Campbell Leasing, Inc. v. Federal Deposit Ins. Corporation, 901 F.2d 1244, at 1249. See also, FDIC v. Wrapwell Corp., 922 F. Supp. 913 (S.D.N.Y. 1996).

This stands to reason because, as Kurland admits in its Memorandum of Law, the purpose of the protection is to facilitate the purchase and assumption of failed banks – which could only be facilitated by extending the protection to purchasers from the FDIC of the failed bank's assets. As the court held in FDIC v. Newhart, 713 F.Supp. 320, at 324 (W.D. Missouri 1989), aff'd, 892 F.2d 47 (8th Cir. 1989),

> In concluding that holder in due course status was transferred to Merchants along with the notes at issue in the instant case, the district court reasoned that a contrary result would emasculate the policy behind § 1823(e) of promoting purchase and assumption transactions. If holder in due course status did not run with the notes acquired by the FDIC in purchase and assumption transactions, the market for such notes would be smaller, which would have a deleterious effect on the FDIC's ability to protect the assets of failed banks.

\

## V. KURLAND FAILS TO STATE A CLAIM FOR A CHARGING LIEN

Kurland states that its charging lien is based upon its counterclaim on behalf of Ramirez in the Chase Foreclosure Action, and upon it representation of Ramirez in the Partition Action. The sina qua non for asserting a nonpossessory charging lien is the existence of proceeds created by the attorney's efforts. See, e.g., Goldstein, Goldman, Kessler & Underberg v. 4000 East River Associates, 64 A.D.2d 484 (4th Dept. 1978). The monetary relief or "proceeds" requested in the counterclaim was $20,000 for alleged wrongful charges under the mortgage and for punitive damages. The monetary relief or proceeds requested and obtained in the Partition Action was for unpaid rent. Thus, Kurland would have a charging lien against $20,000 in proceeds that Chase may pay in the Chase Foreclosure Action and against rent that the Jameses may pay as a result of the Costello Decision in the Partition Action, not against the real property.

Therefore, Kurland's cause of action for a charging lien against the real property must be dismissed as a matter of law for failure to state a cause of action for a charging lien against the real property.

## CONCLUSION

For these reasons, and for the reasons set forth in FNBN I's Memorandum of Law in Support of its Motion to Dismiss and for Summary Judgment, it is submitted that an Order should be made denying the plaintiffs' motion for summary judgment, dismissing the claim requesting a declaratory judgment for a charging lien, and dismissing the claim for a declaratory judgment that FNBN I's mortgage lien is invalid, and for summary judgment in favor of the defendant FNBN I, LLC on all the claims.

16

Dated: New York, New York
      November 10, 2014

                Respectfully submitted,

                Frenkel, Lambert, Weiss,
                Weisman & Gordon, LLP


                /s/Barry M. Weiss
                By:  Barry M. Weiss (BMW – 1869)
                Attorneys for Defendant
                One Whitehall Street
                New York, New York 10004
                (212) 344-3100
                Our File No.: 01-040896-B00


To:
Yetta G. Kurland, Esq.
The Kurland Group
Attorney for Defendant
THE KURLAND GROUP
160 Broadway
East Building, 11th FL
New York NY  10038
(212) 253-6911

Gary F. Herbst, Esq.
LaMonica, Herbst & Maniscalco, LLP
Attorneys for Trustee
GREGORY M. MESSER, ESQ.
3305 Jerusalem Avenue
Wantagh NY  11793
(516) 826-6500

17

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X    **Case No.: 12-12467 (SMB)**

In Re:

    Indhira G. Ramirez,        **CHAPTER 7**

           Debtor.

------------------------------------------------------------------------X    **Adv. Proc.: 14-01798 (SMB)**

The Kurland Group,

           Plaintiff,

    -against-

FNBN I, LLC,

------------------------------------------------------------------------X

           Defendant.

# FNBN I, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO FNBN I, LLC'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND AFFIDAVIT



FRENKEL LAMBERT WEISS WEISMAN & GORDON, LLP

Attorneys for Plaintiff
53 Gibson Street
Bay Shore NY  11706
(631) 969-3100
F (212) 624-9350
Our File No.: 01-040896-B00

To:       Service of a copy of the within is hereby admitted.

             Dated: November 2014

Attorneys for

    Yours, etc.

    FRENKEL LAMBERT WEISS WEISMAN & GORDON, LLP